1. Under the rulings in the cases of Teasley v. Bradley, 110 Ga. 497 (35 S.E. 782, 78 Am. St. R. 113), and Rucker v. Maddox, 114 Ga. 899 (41 S.E. 68) the petition stated a cause of action.
2. Where a wife places funds in the hands of her husband, under his agreement to receive, invest, and reinvest the same from time to time for her benefit, and to hold the proceeds and the profits thereof subject to her demand, the statute of limitations does not begin to run against the wife to call for an accounting until there has been an account rendered, *Page 737 
accompanied by an offer to settle, a refusal upon demand to settle, a notice of adverse claim, an express repudiation of the fiduciary relation, such a change of circumstances of the parties as would be reasonably calculated to put the wife on notice that the relation is no longer recognized, or something to indicate to a reasonably prudent person that the relation has ceased, in which case the law would presume a demand after the lapse of a reasonable time.
(a) Where in such circumstances a husband, after having been in possession of his wife's funds for fifteen or more years, abandoned her with the statement "that he was through with" her, and left her to reside alone, such abandonment accompanied with the statement aforesaid was not such a change of circumstances of the parties as would reasonably be calculated to put the wife on notice that the husband no longer recognized the fiduciary relation as to her property held and controlled by him, nor was it sufficient to indicate to a reasonably prudent person that such relation had ceased.
(b) The fact that the husband was through with his wife and left her to live alone did not necessarily result in a change of, nor was it inconsistent with, the fiduciary relation with respect to the wife's separate estate managed and controlled by the husband.
(c) Nor was such abandonment under the aforesaid circumstances sufficient to put the wife on notice that the husband was holding her property adversely, as contemplated by the terms of the Code, § 85-1706, wherein it is provided that one obtains prescriptive title to personal property when held adversely for four years.
3. Where a husband receives funds from his wife upon his agreement to receive the money, to invest and reinvest the same from time to time for her benefit, and to hold the proceeds and profits thereof subject to the wife's demand, the mere fact that the delivery of the funds is accompanied by the agreement does not operate to create an express, and therefore unenforceable, trust in respect to said funds. But such express verbal agreement may be pleaded and proved to rebut the inference of a gift by the wife to the husband.
4. In an equitable proceeding to trace funds and to impress a trust thereon, where only a single set of facts is alleged, an alternative prayer for the original sum in controversy, plus interest, in the event of failure to trace said funds, is permissible; and the inclusion of such a prayer does not render the petition multifarious as being an action for money had and received, accounting between principal and agent, and the establishment of an implied trust.
5. Where in a petition it is sought to impress a trust upon shares of capital stock of a corporation alleged to be held in the name of one of the defendants, and also upon certain described choses in action held by said defendant against the corporation, and where injunctive relief is requested against changing the status of such stock and choses in action pending the litigation, the corporation is a proper party defendant, and the naming of such corporation as a party defendant to the case does not result in a misjoinder of parties or causes of action.
6, 7. For the reasons pointed out in the opinion, infra, it was not error to overrule the special demurrer to the petition.
 No. 14623. OCTOBER 7, 1943. REHEARING DENIED NOVEMBER 12, 1943. *Page 738 
On November 29, 1941, Mrs. E. W. Allen filed her petition against E. W. Allen, her husband, and Peoples Loan Inc., a corporation engaged in a loan and savings business. She was married to Allen on February 12, 1899, was sixty-five years of age at the time of the filing of the suit, and was living separate and apart from her husband. During coverture she came into ownership, as a part of her separate estate of $4840.86 in cash, and of two parcels of real estate which were sold on June 11, 1920. She received for each parcel $2500, payable $250 cash and $25 per month thereafter, and the final payments on both tracts were due to have been made before the filing of the petition. The sale and the collection of the notes were handled by defendant Allen as the agent of petitioner, who was unfamiliar with the details of the transaction. She never received any of the purchase-money, and only signed the bonds for title in connection with the sales. On August 16, 1919, she placed in the hands of her husband $4840.86 in cash, and on or about June 11, 1920, she placed in his hands the two respective sums of $2500, bond for title collections, the latter being the entire proceeds of the sales above described, with the understanding at the time of the said deliveries that the husband was to use the funds for the benefit of petitioner, and "she did so upon his agreement to receive the money to invest same and reinvest same from time to time for the benefit of your petitioner," and "defendant did not agree to return said money or investments thereof to petitioner at any time specified, but agreed to hold same or the proceeds and profits thereof subject" to her demand. On November 28, 1941, she made a written demand upon defendant for the return of her original moneys, or the proceeds and profits therefrom, and for an accounting. A copy of the demand was attached to the petition as an exhibit, and in it a brief statement of petitioner's contentions with respect to the transactions was outlined in somewhat the same manner as herein outlined. This demand for a settlement was refused by the husband. On April 15, 1919, Allen with others had incorporated Peoples Savings Loan Company, now Peoples Loan Inc., with a capitalization of $100,000, and an actual issue capitalization of at least $10,000. It was alleged in *Page 739 
paragraph 15 of the petition, "That petitioner charges upon information and belief that defendant E. W. Allen, as said confidential continuing agent of petitioner, purchased in petitioner's behalf capital stock of defendant Peoples Loan Incorporated, with said $9840.86 above described, at exact times unknown to your petitioner, but charged by your petitioner to be as follows: $4840.86 worth of said stock on or about August 16th, 1919; $5000 worth of said stock as collections were made by defendant E. W. Allen from proceeds of sale of said real estate."
Paragraph 16: "Petitioner had no actual knowledge of said purchase of said capital stock at said time, but charges and believes that said capital stock was purchased in the name of E. W. Allen, and represented at least 393 shares of the common capital stock of Peoples Loan Incorporated, then called Peoples Loan Savings Company." Allen was alleged to be an implied trustee for petitioner of all of said stock, or any other property purchased with her money at such time when he was her confidential continuing agent, and in equity she is the owner of said stock and all profits or dividends therefrom; that he has in his name or purports to own 482 shares of preferred stock and 542 shares of common stock of Peoples Loan Inc., of a present fair market value of at least $55,000. From year to year since the purchase of this stock it has paid dividends or percentages in amounts unknown to petitioner, which she never received, but were received by Allen, who either purchased additional stock with same or loaned them to Peoples Loan Inc. It was charged, that Peoples Loan Inc. now owes to defendant Allen $30,000 with interest at six per cent., evidenced by a promissory note, which includes in part the proceeds, dividends, or profits due to petitioner from her original investment in capital stock; but she does not know and is unable to trace the exact amount due to her, without the aid of the books and records of the defendants; that the promissory note has a market cash value of $30,000, and Peoples Loan Inc. is solvent and can pay the loan to Allen; that Allen holds in trust for petitioner, by virtue of the facts stated, at least one half undivided interest in all the capital stock standing in the name of E. W. Allen on the books of said corporation, or owned by him either at law or in equity, and also at least one-half undivided interest in the promissory note. Request was made that the court impress upon said property a trust *Page 740 
in petitioner's behalf, first upon the undivided interest, and thereafter upon said interests after division or partition in kind as her interest finally appears. Paragraph 23. "Petitioner shows upon information and belief her beneficial interest in said capital stock and said note or loan does exceed said one half interest in an amount unknown to your petitioner, and petitioner desires this court to determine the exact amount of property ownership petitioner does have in said capital stock and said note or loan, and cause the legal title to same to be transferred to your petitioner by causing petitioner's undivided interest in said note or loan to be assigned to petitioner, and by causing the capital stock owned by petitioner to be transferred to petitioner on the books of defendant Peoples Loan Incorporated. Petitioner shows that said undivided interest can be finally determined and ultimately partitioned to your petitioner by tracing from the books of defendant Peoples Loan Incorporated and defendant E. W. Allen said original investment in behalf of petitioner, made by defendant E. W. Allen, all stock and money dividends therefrom and any other profits or proceeds therefrom accruing, their reinvestment in said capital stock or accumulation in said loans, and all investments or reinvestments of any interests collected by said E. W. Allen from any and all loans made in behalf of petitioner from time to time during said period of time defendant Allen acted as petitioner's confidential and continuing agent until the time of said demand. That said records and books had never been available to your petitioner, but from said records petitioner charges that an accounting and tracing of said original investment can be finally and ultimately established."
On November 1, 1935, defendant Allen abandoned petitioner without cause, stating to her at the time "that he was through with petitioner," and they have lived apart since the abandonment. At this time petitioner had no knowledge of the results of the investments made for her by Allen, and was too ill and fearful of injury by Allen to demand an accounting. On occasions Allen, while acting as her agent as aforesaid, threatened her with injury and intimidated her by swearing and using vile epithets, causing her mental pain and suffering, and controlled her will power to the extent that she was afraid to mention an accounting. She was ignorant of business matters, and her husband had managed and *Page 741 
controlled her separate property since their marriage. There were averments to the effect that Allen had entered into an option contract to sell all interests standing in his name, or belonging to him, in Peoples Loan Inc., for the sum of $85,000. Paragraph 26 of the petition alleged: "Petitioner is informed and believes that defendant E. W. Allen has stated that he intends to sell said stock, convert same into cash, and remove himself and his residence from the State of Georgia to the State of Florida, and take with him said cash proceeds from said sale beyond the control of this court; and likewise petitioner charges that defendant Allen intends to convert into cash all other assets, including the E. W. Allen Printing Company, owned individually by said defendant, and all equities in real estate owned by him, and take said cash proceeds with him without the jurisdiction of this court and without said State, without accounting to petitioner as heretofore requested and demanded by petitioner. Said actions by said defendant Allen in removing himself and his assets from this State and from the jurisdiction of this court will render petitioner without any practical remedy or relief whatsoever, in that petitioner is without funds to proceed to another state, or leave the City of Atlanta. Petitioner shows that said assets of said defendant heretofore described should all be placed in the hands of a receiver of this court, to preserve same in statu quo and to administer same in accordance with the orders and decrees of this court."
The prayers of petitioner are numerous and fully stated, but for present purposes they may be summarized and segregated as follows: (a) for process; (b) that a trust be imposed upon petitioner's undivided interest in the capital stock of Peoples Loan Inc., and the note or loan owing by Peoples Loan Inc. to E. W. Allen, and upon any other property of defendant Allen found to be subject to said trust; (c) that petitioner's exact undivided interest in the capital stock and note, or other property, be determined, and a partitioning in kind and amount thereof be decreed, and that her interest so decreed be segregated to her; (d) that defendant Allen be required to assign and convey to petitioner the legal title in all trust property held by him for her benefit, and that Peoples Loan Inc. be required to recognize and accept said assignment, or by transferring upon its books any and all capital stock decreed to petitioner; (e) that Peoples Loan Inc. be directed to permit an *Page 742 
inspection and audit of its books and records by petitioner or her agents; (f) that defendant Allen be required to account to petitioner for the original sum of cash delivered to him as outlined in the petition, with interest at seven per cent. per annum from date of delivery, in case the identity of said funds and profits thereof cannot be traced; (g) that Allen be required to account to petitioner for all proceeds, profits, dividends, interest, or other moneys, belonging to petitioner, consumed by him, that cannot be traced; (h) that Allen be enjoined from in any manner disposing of any stock held or owned by him in Peoples Loan Inc., and that Peoples Loan Inc. be enjoined from transferring on its books any of its capital stock now in the name of E. W. Allen or by it known to be owned by Allen; (i) that Allen be enjoined from disposing of in any manner any of his property, except a reasonable amount for necessities of life pending this litigation; (j) for receivership, and writ of ne exeat, and (k) for general relief.
The demurrers were overruled, and the defendant excepted.
The petition is challenged by general demurrer on the grounds that (1) no cause of action is set forth either at law or in equity; (2) that if any cause of action is stated, it is barred by the statute of limitations; and (3) that it seeks to set out a cause of action upon an express trust in parol, and is therefore void.
1. The petition appears to have been cast in the mold of the cases of Teasley v. Bradley, and Rucker v. Maddox, cited above, and the rulings there made being controlling, a cause of action is stated.
2. Whenever a husband acquires possession of funds which are the separate property of his wife, for the purpose of investing, reinvesting and managing the same, subject to the wife's demand, and running from year to year, the husband is in a fiduciary relation to his wife and occupies towards her the position of a confidential and continuing agent; and the statute of limitations would not begin to run "against the right of the wife to call for an accounting, until there has been an account rendered, accompanied by an offer to settle, a refusal upon demand to settle, a notice of adverse claim, an express repudiation of the fiduciary relation, such *Page 743 
a change of circumstances of the parties as would be reasonably calculated to put the wife on notice that the relation was no longer recognized, or something to indicate to a reasonably prudent person that the relation has ceased." Barber v.Barber, 125 Ga. 226 (3) (53 S.E. 1017). See Oliver v.Hammond, 85 Ga. 323 (11 S.E. 655); Teasley v. Bradley
and Rucker v. Maddox, supra; Murphy v. Johnston,190 Ga. 23, 25 (8 S.E.2d 23). In the circumstances last referred to, the law would presume a demand after the lapse of a reasonable time, and from such time the statute would begin to run. Teasley v. Bradley, supra. Where, as in the instant case, such agency had continued from August 16, 1919, and June 11, 1920, being the dates on which the wife delivered to her husband her property (money) for the purposes aforesaid, and on November 1, 1935, the husband abandoned the wife without cause with the statement "that he was through with petitioner," and left her to reside alone, and on November 28, 1941, the wife made written demand upon the husband for the return of her original moneys or the proceeds and profits therefrom, and upon his refusal to comply with said demand suit was filed on November 29, 1941, for accounting, to trace funds, to impress a trust on certain stocks in a private corporation and choses in action held in the husband's name, and for other equitable relief, such suit was not barred by the statute of limitations by reason of the contention of the husband that such abandonment was a sufficient change in the circumstances of the parties as would reasonably be calculated to put the wife on notice that the husband no longer recognized the existence of the agency and fiduciary relation, that he ceased from that time to be her confidential and continuing agent, and that he was holding her property adversely; it being contended that the husband had held the same adversely for more than four years, and under the Code, § 85-1706, had obtained prescriptive title thereto. The plaintiff in error relies on Barber v. Barber, supra, as supporting the contention that the abandonment of the wife by the husband with the statement "that he was through with petitioner" was "such a change of circumstances of the parties as would be reasonably calculated to put the wife on notice that the relation was no longer recognized, or something to indicate to a reasonably prudent person that the relation has ceased." In the cited case the husband, after having been in possession of the *Page 744 
wife's property for twenty-one years without having rendered to her an account, delivered possession to his wife of the property then remaining in his hands, which as contended by the wife was less than what she was entitled to, according to her suit against the executor of her husband, which was filed sixteen years after the time the husband had made delivery of the property to his wife. The court held that such delivery of the remaining property in his hands and abandonment of all control of it was "a loud-sounding notice to her," in effect saying, "I consider myself under no further liability to you on account of your property which I have been managing," and that the wife failed at her peril to heed this notice. The court further stated that it was not necessary to determine exactly what would be a reasonable time after this surrender from which the statute would begin to run; for under any circumstances after the lapse of sixteen years from the time of surrender the suit would be barred. The mere fact of abandonment of the wife, without surrendering or accounting to her for the property or any part thereof, is not inconsistent with the continuation of the agency and fiduciary relation respecting the management of the wife's property; and especially is this true where no reference was made, either express or implied, that would indicate a repudiation of the agency, or notice of an adverse claim. In Ewing v. Tanner,184 Ga. 773, 779 (193 S.E. 243), it was said: "The nature of the possession of personal property and that of realty, required to give title by prescription, is the same. Blocker v.Boswell, 109 Ga. 230, 237 (34 S.E. 289). In order for a possession to be the foundation of prescription, or to be adverse, it must meet all the requirements specified in [the Code] § 85-402. . . Among these requirements is that the possession must be accompanied by a claim of right. The term `claim of right' is synonymous with `claim of title' and `claim of ownership.'" Citing 2 C. J. S. 571, § 55. In the absence of some expression or act on the part of the husband at the time of the abandonment, indicating a "claim of right" adverse to the wife with reference to the property held by him as her confidential continuing agent, it must be held that the husband's possession was the possession of the wife until her demand and his refusal for an accounting.
3. The petition was not subject to demurrer on the ground that it seeks to set out a cause of action upon an express trust in parol, *Page 745 
because of the husband's verbal agreement at the time of delivery of the funds to him by the wife to receive the money, to invest and reinvest same from time to time for the benefit of the wife, and to hold the proceeds and profits thereof subject to the wife's demand. Such a trust arising in these circumstances is not destroyed by an express verbal, and therefore unenforceable, agreement of the husband. The parol agreement cannot be enforced as an express trust, but equity will enforce the implied trust arising under such circumstances. It is also permissible to show the express agreement to rebut the inference of a gift by the wife. Jackson v. Jackson, 150 Ga. 544, 549 (104 S.E. 236);McDonald v. Dabney, 161 Ga. 711, 731 (132 S.E. 547);Romano v. Finley, 172 Ga. 366 (157 S.E. 669); Hemphill
v. Hemphill, 176 Ga. 585, 590 (168 S.E. 878); Guffin v.Kelly, 191 Ga. 880, 886 (4 S.E.2d 50).
4. Ground 17 of the demurrer attacks the petition for multifariousness as attempting to allege four separate and distinct causes of action in the same count, viz., (a) for money had and received, (b) upon an express trust, (c) upon an implied trust, and (d) for an accounting between principal and agent. Although the petition contains an alternative prayer for the original sum of money delivered to the husband, plus interest, in the event the funds could not be traced, it does not necessarily follow that a cause of action for money had and received is stated. Such an alternative prayer is permissible. Grant v.Hart, 192 Ga. 153 (2b) (14 S.E.2d 860). "An allegation with respect to, or a prayer for, alternative relief or relief to which the plaintiff is not entitled, if based upon a consistent statement of a single `set of facts' can not properly be made the subject-matter of a charge of `duplicitous pleading.'" Orr v.Cooledge, 117 Ga. 195, 206 (43 S.E. 527). The prayer for an accounting was necessary and proper in connection with the tracing of funds and ascertaining profits. Grant v. Hart, supra, and cit. As pointed out above, no express trust is involved in the case. The cause of action is predicated upon the sole theory of an implied trust growing out of the relation of the husband as the confidential and continuing agent of petitioner. No other inconsistent theory or right is claimed, and the petition is not subject to criticism urged in this ground.
5. There is no misjoinder of parties, as contended in ground 16 of the demurrer. "Generally all persons interested in the litigation *Page 746 
should be parties to the proceedings for equitable relief." Code, § 37-1004. "There is no misjoinder of parties or causes of action, even if the petition concerns things of a different nature against several defendants whose rights are distinct, if it sets forth one connected interest among them all, centering in the point in issue in the case." Hermann v. Mobley, 172 Ga. 380
(3) (158 S.E. 38), and cit. See also Thornton v. Martin,116 Ga. 115 (42 S.E. 348); Waters v. Waters, 167 Ga. 389
(3) (145 S.E. 460); Jackson v. Jackson, 179 Ga. 696 (4) (177 S.E. 591). It was the petitioner's right to have the interests held in the name of her husband, on the books of Peoples Loan Inc., remain unchanged until such time as her alleged interest therein could be determined in a court of equity, and to do this it was necessary and proper to join Peoples Loan Inc. as a defendant in order to bring under the supervision of the court the property in which petitioner claimed an interest. If it should be found upon the trial of the case that title to the stock in question is in petitioner, the corporation is a necessary party, "in order that the plaintiff might get full relief and have the transfer made on the books of the company." Thornton v. Martin, supra.
6. Grounds 5, 6, 7, 9, 11, and 12 of the demurrer are special in character, attacking various paragraphs of the petition. The objections raised by this demurrer, when analyzed, complain that an attempt is made to plead an express trust without alleging in substance the terms and conditions thereof; that it does not appear whether the understanding between the petitioner and her husband was oral or in writing; that the allegations of the petition are contradictory and too vague and uncertain to show an implied trust; and that the petition fails to show when and in what amounts the alleged sums of money were delivered by petitioner to her husband. "All express trusts are required to be in writing. Code, § 108-105. The petition need not allege that the trust was in writing, and is not subject to demurrer because failing to make such allegation." Beecher v. Carter,189 Ga. 234, 241 (5 S.E.2d 648). Where, however, the trust forming the basis of the action is construed to be an express trust, and therefore to be enforceable must be in writing, "it is proper to sustain the demurrer on the ground that the agreement was not incorporated in or attached to the petition." Beecher
v. Carter, supra. Obviously such a rule could have no application *Page 747 
where an implied trust is involved. "An implied trust is necessarily based upon an implied contract, — implied either in fact or in law." Guffin v. Kelly, supra, citing Jackson v.Jackson, Hemphill v. Hemphill, supra. The petition having been construed as proceeding upon an implied trust, the contention in this respect cannot be sustained. Nor is the petition subject to the criticism that it alleges contradictions, and is too vague and indefinite to show an implied trust. By reference to the statement of the case it will be seen that on August 16, 1919, the petitioner placed in the hands of her husband $4840.86 in cash, with which it was alleged he purchased stock in Peoples Loan Inc. on that date. On June 11, 1920, she placed in his hands $5000 bond for title collection, payable $50 per month, with which he purchased stock in Peoples Loan Inc. as the collections were made by him. The amount of stock held by the husband was alleged, as well as the plaintiff's interest therein. These allegations are sufficiently definite as against the demurrer.
7. Grounds 9, 10, 13, and 14 of the special demurrer are directed to paragraphs 15, 16, 23, and 26 of the petition. Summarizing the objections raised in these demurrers, which have not heretofore been considered in this opinion, they may be treated as complaining that the averments contained in these paragraphs are not positive and definite, and allege only the "information and belief" of the petitioner. A positive allegation based upon information and belief is permissible. However "An averment that complainants are informed and believe that a fact exists is a mere statement as to their information and belief, and is not equivalent to positive allegation of the fact itself."Nance v. Daniel, 183 Ga. 538, 543 (189 S.E. 21), citingMcLendon v. Hooks, 15 Ga. 533; Taylor v. Harp, 37 Ga. 359;Jones v. Macon Brunswick R. Co., 39 Ga. 138; Hone
v. Moody, 59 Ga. 731; Landes v. Globe Planter Mfg. Co.,73 Ga. 176; McKenzie v. Thomas, 118 Ga. 728 (6) (45 S.E. 610). See Bailey v. B. F. Coggins Granite Co., 192 Ga. 72
(14 S.E.2d 568); 41 Am. Jur. § 40. It would seem to be the better practice to require a pleader to allege unequivocally, without reference to information and belief, respecting matters primarily within his knowledge or by reason of the circumstances presumed to be within his knowledge; but averments with reference to facts and matter primarily and peculiarly within the knowledge of the *Page 748 
opposite party may be made upon information and belief. The facts constituting the subject-matter of the allegations of paragraphs 15 and 23 are positively averred, though upon information and belief, and are not allegations merely of petitioner's information and belief, as contended by the plaintiff in error. While the language used in paragraph 16 might not be as positive as the rule requires, in view of the fact that the averments contain matters primarily within the knowledge of the defendant husband, it cannot be held to be so indefinite as not to form a controvertible issue, Paragraph 14 of the demurrer is directed to paragraph 26 of the petition, upon the grounds that only conclusions are pleaded, and allege merely petitioner's information and belief, and are not germane to the cause of action. This paragraph contains both positive averments and averments which are nothing more than the petitioner's information and belief. The paragraph as a whole is not subject to demurrer upon the grounds urged; and since the demurrer assaults the paragraph as a whole, without specifying the objectionable allegations, it must fail in its office as a critic, and was properly overruled. Washington Water ElectricCo. v. Pope Mfg. Co., 176 Ga. 155 (2) (167 S.E. 286);National Bondholders Cor. v. Cheeseman, 190 Ga. 166, 168
(8 S.E.2d 391).
All other grounds of demurrer not herein specifically considered, and not abandoned by the plaintiff in error, have been examined and found to be without merit.
Judgment affirmed. All the Justices concur.